IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LOIS G. HUNT                                                  PLAINTIFF

v.                       CIVIL NO. 04-3034

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Lois G. Hunt brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim period of disability and disability insurance benefits under the provisions of Title II of the Social Security Act (Act).

**Procedural Background:**

The application for DIB presently before this court was filed on August 8, 2002, alleging an inability to work since July 30, 1994, due to osteoarthritis, rheumatoid arthritis, pain, disfigured fingers and large joints. (Tr. 58-60). An administrative hearing was held on April 22, 2003. (Tr. 156-171). Plaintiff was informed of her right to have a representative but chose to continue with the hearing on her own. (Tr. 158-160).

By written decision dated August 26, 2003, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 24). However, after reviewing all of the evidence presented, he determined that as of December 31, 1999, plaintiff's date last insured, she maintained the residual functional capacity (RFC) to perform a full range of light work. (Tr. 24). With this RFC, the ALJ determined plaintiff was able to perform her past relevant work as an assembly line worker.

1

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied. (Tr. 2-4). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties were afforded the opportunity to file appeal briefs; however, only defendant chose to do so. (Doc. # 5).

**Evidence Presented:**

At the time of the administrative hearing on April 22, 2003, plaintiff was fifty-nine years of age and obtained a ninth grade education. (Tr. 163). Plaintiff testified she worked on an assembly line most of her life until July of 1994, when the line she worked on was moved out of the country and she was laid off. (Tr. 163-164). Plaintiff testified she had been a lead on her line and felt she could not go back to the line doing piece work because of problems she was having with her hands and neck. (Tr. 164). Plaintiff testified she had problems looking down and her hands were swollen and painful. (Tr. 164-165). After her line was transferred, plaintiff testified she began to draw unemployment and looked for a job for a year without any results. (Tr. 165).

Plaintiff testified that she was only taking Tylenol for pain medication because when she was first diagnosed with arthritis in 1978, the medications caused her stomach problems. (Tr. 161-162, 166). Plaintiff testified she has not been able to take arthritis medication since that time. (Tr. 166).

Plaintiff testified that on a typical day she washed dishes, prepared meals and did a little house cleaning if she felt like it. (Tr. 167). She testified that it was difficult for her to do buttons and zippers but she could write for a little while before her hand cramps, water her flowers and fish one to four times a week. (Tr. 167-168).

Mr. Stanley Hunt, plaintiff's husband, testified plaintiff has had problems with her hands for years. (Tr. 168-169).

AO72A
(Rev. 8/82)

The objective medical evidence in this case reflects the following. Plaintiff was treated by Dr. Bob Langston from June of 1989, through April of 1996, for various complaints including allergies, fibrocystic disease of the breasts, climateric syndrome, bilateral tendonitis, epigastric discomfort and osteoarthritis. (Tr. 126-133). Plaintiff did not take oral medication for her wrist pain because it caused stomach problems but splints did provide some relief. Dr. Langston opined that plaintiff could continue to work. (Tr. 132).

On September 22, 1992, plaintiff underwent a MRI of the cervical spine which was suspicious for herniated nucleus pulposus at C4-5, showed probable post traumatic changes of C4 and bulging discs at C3-4, C5-6 and C6-7. (Tr. 106).

Plaintiff was seen by Thomas R. Butler, D.C, from April of 1983, through December 23,1992. (Tr. 111-120). In November of 2002, Mr. Butler opined plaintiff could return to work but would have ongoing limitations in her ability to bend her head and neck downward. (Tr. 111).

Progress notes dated February 2, 1999, report plaintiff's complaints of uncontrolled hot flashes and breast tenderness. (Tr. 124). Plaintiff reported no other ongoing medical problems. Dr. Tom diagnosed plaintiff with climacteric syndrome and fibrocystic breast disease. Plaintiff was given a prescription for Estratab.

On September 23, 2002, and on November 6, 2002, two separate non-examining medical consultants opined plaintiff did not have a severe impairment prior to expiration of her insured status. (Tr. 134).

On November 11, 2002, Dr. Ronald Rubio examined plaintiff for evaluation of her joint pains. (Tr. 136). Dr. Rubio noted plaintiff was diagnosed with degenerative disc disease involving her cervical spine in the 1970's. Plaintiff reported she was told she also had rheumatoid arthritis in 1991, for which she was tried on several NSAID's which were discontinued because of intolerable side

3

effects. Plaintiff reported worsening pain since involving her neck and hands associated with morning stiffness that lasted for one hour. Plaintiff complained of neck and muscle spasms associated with occipital headaches. Plaintiff reported at one time she was evaluated by an orthopedic surgeon who injected her right wrist for carpal tunnel syndrome that gave temporary relief to her hand pain. Plaintiff complained of an increase in her hand pain and that she woke up four to five times a night because of throbbing pain in her hands associated with fatigue during the day. Plaintiff denied recent joint swelling.

Upon examination, Dr. Rubio noted plaintiff had a normal gait and station. (Tr. 137). Inspection of the wrists, elbows, shoulders, neck, knees, ankles and feet showed no evidence of synovitis. Plaintiff had a diminished grip and wrist flexion and extension. Dr. Rubio noted a diminished shoulder abduction at 130 degrees and diminished neck extension and lateral rotation. Dr. Rubio noted tenderness to palpation of the right knee and tender ankle and MTP joints to lateral pressure. X-rays of plaintiff's cervical spine showed degenerative changes at multiple levels but more pronounced at the mid cervical spine. X-rays of plaintiff's hands showed degenerative changes on PIP and DIP joints with the most pronounced disease at the right third PIP. Dr. Rubio diagnosed plaintiff with osteoarthritis of the hands and cervical spine. Plaintiff was started on Arthrotec and instructed to use paraffin baths for her hands as a form of heat therapy. Plaintiff was to return in three months.

On July 11, 2001, plaintiff complained of epigastric discomfort in her right upper quadrant. (Tr. 144). Plaintiff was scheduled for an ultrasound. On July 19, 2001, plaintiff called the office and was told her gallbladder ultrasound was within normal limits. (Tr. 144). Plaintiff reported feeling one hundred percent better.

On November 20, 2001, plaintiff presented to Dr. Tom Leslie's office reporting a history of uterine cancer and colon cancer polyps and had a hysterectomy in 1981. (Tr. 143, 145). Plaintiff

4

complained of abdominal discomfort. An ultrasound did not show any major problems. Examination of plaintiff's head, ears, eyes, nose and throat was benign and a cardiovascular examination showed regular rate and rhythm with no murmurs, rubs or gallops. Plaintiff's chest was clear and her abdomen was soft and non-tender.

On May 22, 2003, plaintiff underwent a consultative examination performed by Dr. Charles D. Varela of the Ozark Orthopedic and Hand Surgery Center. (Tr. 148-155). Plaintiff complained of pain and swelling in her hands and left elbow, neck and back after sitting for long periods of time. Dr. Varela reported plaintiff rated her neck and hand pain in the range of eight to ten on a ten point scale. Dr. Varela reported that physical therapy and Tylenol improved plaintiff's symptoms mildly.

Upon examination, Dr. Varela noted plaintiff had a limited range of motion of the cervical spine. (Tr. 148). Plaintiff's flexion was normal at forty-five degrees and extension was ten degrees. Right lateral flexion was limited to ten degrees and left to twenty degrees. Rotation was limited to approximately forty degrees on the left and fifty degrees on the right. Shoulder and elbow ranges of motion were normal. A hand examination was significant for enlargement and tenderness and grinding at the thumb carpometacarpal joints bilaterally. Plaintiff had reduced range of motion of the metacarpophalangeal joint in both hands and swelling and soft tissue thickening of the proximal interphalangeal joints. Hip, knee and ankle exams were normal. A lumbar spine exam was normal with full range of motion. Plaintiff did have diffuse tenderness along the midline in the lumbar region. No spasm was present. Soft leg raises were normal. Plaintiff also underwent x-rays of the cervical and lumbar spine and hands. Dr. Varela opined plaintiff's hands were impaired, the right particularly to grip activities such as lifting, carrying, pushing and pulling. Repetitive motions were not recommended. Dr. Varela limited plaintiff to occasionally lifting twenty pounds and frequently lifting less than ten pounds. He opined plaintiff's standing and sitting were not impacted. Due to her lumbar disc

5

degeneration and facet arthritis, Dr. Varela limited plaintiff's balancing and kneeling to a frequent basis and climbing, crouching and stooping to an occasional basis. Reaching was unlimited however, handling, fingering and feeling were limited to an occasional basis. Seeing, hearing, speaking and traveling were unlimited.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

**Discussion:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 1999. (Tr. 19,81). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of July 30, 1994, her alleged onset date of disability, through December 31, 1999, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical

AO72A
(Rev. 8/82)

evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id.* at 1169.

We now address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated plaintiff's subjective complaints. Although plaintiff contends that her alleged osteoarthritis, rheumatoid arthritis, disfigured fingers, large joints and pain were disabling prior to the expiration of her insured status, the evidence of record does not support this conclusion. The medical evidence does show plaintiff sought treatment for neck pain, bilateral tendonitis and osteoarthritis during the relevant time period; however, none of plaintiff's treating physicians recommended that plaintiff discontinue working. In fact, both Dr. Langston and Mr. Butler opined that plaintiff could still work in 1996, and 2002, respectively. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Furthermore, in February of 1999, plaintiff reported that her only complaints were hot flashes and breast tenderness. That was the only time plaintiff sought treatment in 1999, and there is no evidence that she sought treatment again until November of 2002, which was

almost three years after her insured status expired. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *Mearing v. Barnhart*, 88 Fed.Appx. 148, 150 (8th Cir. 2004) (citations omitted).

Plaintiff also testified that she stopped working in 1994, because her line was moved to another country not because she was no longer able to perform the tasks required.

Plaintiff's reports concerning her daily activities are also inconsistent with her claim of disability. The record reveals that in a Supplemental Interview Outline dated August 8, 2002, plaintiff was able to bathe, handle her hair care, do laundry and dishes and some vacuuming and sweeping, shop for groceries and clothes and go to the Post Office and bank (Tr. 93). Plaintiff also reported that she was able to prepare meals, pay bills, drive, walk for exercise and errands, watch television, listen to the radio, read and visit with friends and relatives. (Tr. 94). At the hearing in April of 2003, over three years after her insured status had expired, plaintiff testified that she did have problems with her hands but she was able to do some household chores, water her flowers and fish one to four times a week. These activities of daily living demonstrate functional capabilities inconsistent with plaintiff's claim for total disability prior to December 31, 1999. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

We next turn to the ALJ's assessment of plaintiff's RFC. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical

question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir.2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545©, while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel,* 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark.1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case the ALJ determined that plaintiff maintained the RFC to perform a full range of light work. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on her activities prior to December 31, 1999. Dr. Varela did find plaintiff had some limitations in May of 2003, due to arthritis in her hands and cervical and lumbar spine. However, this was almost three and a half years after plaintiff's insured status had expired. Therefore, based on all of the evidence contained in the file, we see no reason why plaintiff would have been unable to perform the RFC determined by the ALJ prior to and up until the expiration of her insured status.

Finally, we believe substantial evidence supports the ALJ's conclusion that plaintiff can return to her past relevant work as an assembly line worker. According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
> 2. The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

AO72A
(Rev. 8/82)

20 C.F.R. § 404.1520(e); S.S.R. 82-61 (1982); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61). Plaintiff described the demands of this job in the Work History Report that she completed when she filed for DIB, and it does not appear that this job requires capabilities outside her RFC.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed and plaintiff's Complaint should be dismissed with prejudice

DATED this 17th day of August 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)